HARRINGTON v. KNEELAND-BIGELOW CO.

1. DEEDS—SALE OF TIMBER—REVERSION AFTER EXPIRATION OF TIME FOR REMOVAL.

Where all the timber on certain described land was sold and deeded by grantor to a corporation, to be removed within a certain number of years, the title to all the timber not removed at the expiration of the period reverted to grantor's heirs, he having died intestate in the meantime; it being clear that grantor never intended to part with the fee of the land, but did intend to put a limitation upon the time within which grantee must remove the timber.

2. EQUITY—JURISDICTION—INJUNCTION—FORFEITURE.

Equity has jurisdiction to restrain defendant from cutting and removing timber which by the terms of the conveyance reverted to plaintiffs after the expiration of the time for removing same.

Appeal from Montmorency; Emerick (Frank), J. Submitted January 6, 1921. (Docket No. 49.) Decided March 30, 1921.

Bill by Jessie M. Harrington and others against the Kneeland-Bigelow Company to enjoin the removal of timber from certain land. From a decree for plaintiffs, defendant appeals. Affirmed.

*I. S. Canfield,* for plaintiffs.

*Elmer G. Smith,* for defendant.

MOORE, J.  The questions involved in this litigation are so clearly stated by the trial court that we quote his opinion:

"The plaintiff Jessie M. Harrington is the widow of Hiram Harrington, who died intestate on January 11,

1913, and the other six plaintiffs are his infant children and heirs at law. In his lifetime Hiram Harrington was the owner of a parcel of land in this county and on June 19, 1907, he sold and deeded to defendant:

" 'All timber standing, lying or being on a certain piece or parcel of land situate and being in the township of Vienna, county of Montmorency and State of Michigan, and described as follows, to wit:

" 'On the southeast quarter of northeast quarter of section six, town thirty (30) north, of range one (1) east, said second party to have eight years from date to remove said timber, said first party to pay the taxes for the first four years, said second party to pay the taxes for the last four years, if timber is not removed prior to that date.'

"After the death of Hiram Harrington, and on June 2, 1913, his widow, the plaintiff Jessie M. Harrington, gave to defendant an agreement in writing, bearing that date, containing this clause:

" 'And said first party shall give to said second party the right to enter upon said premises to cut and remove said timber without any hindrance whatsoever, for a period of five years from this date.'

"The defendant never entered upon this land, or cut or removed any timber therefrom, until some time in the month of January in the year 1919, when it did enter upon said land in its preparations to cut such timber, but was stopped from so doing before it had cut any appreciable amount by the preliminary injunction issued in this suit. Hence the subject-matter of the suit, and the contest between the parties, arises from and involves their conflicting claims as to the present ownership of the uncut, standing and growing timber upon this land.

"I hold that in January, 1919, the legal title to the uncut timber had reverted to, and revested in, the estate of Hiram Harrington by virtue of the terms of his deed of June 19, 1907; and in support of such holding I propose now to cite and consider certain cases where almost the same words have been construed by our own court.

"In the case of *Williams* v. *Flood*, 63 Mich. 487, the words of the written and sealed contract are set out at page 490 as:

" 'The party of the first part, for and in consideration of the sum of five hundred dollars, to me in hand paid by Henry W. Williams, the receipt whereof is hereby acknowledged, do, by these presents, sell, assign and convey to the said Henry W. Williams all the standing timber,' etc.

"And at page 488 as:

"Giving and granting the said Henry W. Williams the undisputed right, for two years from this date, to enter upon the said premises and remove the said timber, the same as if he, the said Henry W. Williams, was the owner in fee of said lands.

"In construing this sealed instrument, Mr. Justice CHAMPLIN at page 491 said:

" 'It appears to me that the parties intended the one to sell and the other to purchase the standing timber, upon condition that it should be removed from the land within the time specified, and that the title to such as should remain upon the land at the expiration of the time should revest in the vendor; the effect of the whole transaction being a sale of so much of the timber as the vendee should remove from the land within the time limited in the agreement for its removal. * * * The breach of the condition worked a forfeiture of the plaintiff's right and title to the remaining timber.'

"I accept this doctrine implicitly. True it is that these are the words of only two judges, or of only one, if you please. I stand on them not by reason of the number pronouncing them, but because of their inherent probity and soundness.

"In the case of *Macomber* v. *Railroad Co.*, 108 Mich. 491 (32 L. R. A. 102, 62 Am. St. Rep. 713), the written contract provided:

" 'The Cutler & Savage Lumber Company has this day sold to J. S. Wiedman of Lake View, Michigan, all of the timber on the entire section twenty-nine in town thirteen north, of range seven west. The said J. S. Wiedman is to remove the timber in two years from this date.'

"Justice MONTGOMERY in his opinion, concurred in by the entire court, at page 492 says:

" 'Contracts containing similar provisions have been construed in the courts in a number of the States, and the weight

of authority supports the defendant's contention that, as to timber remaining uncut at the expiration of the time limited under a contract such as this, the title reverts to the owner of the realty.'

"In other words it is not necessary to use the words 'shall revert' in order to cause such reversion.

"In the case of *Hodges* v. *Buell*, 134 Mich. 162, the defendants had sold and deeded to complainant a parcel of land with this reservation:

"'First party (defendants Buell and Fler) reserves all saw timber on said land, with right to enter upon and remove same within two years.'

"During that period defendants entered upon lumbering operations, and at its expiration they had some logs cut which they had not removed from the land and some of the timber remained standing. It was very clearly held in this case that as to logs manufactured by defendants before the expiration of the time limited, but not yet then removed, defendants had title, but that as to all timber then uncut and still standing defendants had lost all further right or title.

"In this case (*Hodges* v. *Buell*) Chief Justice HOOKER, after quoting the above paragraph from the opinion of Justice MONTGOMERY in the *Macomber Case*, at page 169, says:

"'Taking this as a correct statement of the law, it would seem to be finally settled in this State that, where one acquires title to standing timber, the same to be removed within a time stated, he cannot be divested of his title to such as he severs from the soil during the period, whether he takes it away from the premises within such period or not. * * * but that he is divested, by lapse of time, of the title to such as was not severed.'

"And again at page 170:

"'Under the rule above stated, we must hold, as an abstract proposition, that the title to the timber standing was in the complainant (Hodges) after the expiration of the period fixed by the contract. * * * On the other hand, these cases show that the defendants have no further right or title in the standing timber; or such as they cut after the expiration of such period.'

"And so I say in this case that as to the timber standing and uncut on the land in January, 1919, the

defendant had no title whatever, and if it had then cut, removed and converted the whole, or any part, of such timber it would have been liable to plaintiffs in an action at law for its value, or in replevin for the specific property; and so it will be if it does so now.

"In defendant's brief much importance seems to be attached to the fact that no writing, limiting the time of cutting the timber, was 'signed' by defendant. Neither was there by the vendee in either of the three cases hereinbefore considered.

"But defendant says, even if such be the law so well settled as to have become a rule of property, plaintiffs may not have relief by injunction to prevent our cutting their standing timber because that would be asking equity to enforce a forfeiture which it will not do.

"But, as was said by Chief Justice MOORE, in the case of *Dye* v. *Woodenware Co.*, 169 Mich. 78:

"'Equity is invoked in this instance, not to declare a forfeiture * * * but to prevent a removal of property belonging to the complainant.'

"True it is in that case the parties had included in their contract the express provision that all timber remaining on the land, whether cut or uncut, should 'revert.' But, in the present case as to the timber uncut and standing in January, 1919, the addition to the writing, which was made, of the express provision that such timber should revert would have added absolutely nothing to the words actually used, for, as we have just seen from the cases cited, the legal effect of the words used was to cause the standing timber to 'revert' to the plaintiffs.

"To make my meaning clear, take the case of *Macomber* v. *Railroad Co.*, just cited and quoted from. There the only words of limitation were:

"'The said J. S. Wiedman is to remove the timber in two years from this date.'

"But the court unanimously held that, as to timber remaining uncut, the title 'reverts' to the owner of the realty. And of course to the same effect are the above cases of *Williams* v. *Flood* and *Hodges* v. *Buell.*

"To deny plaintiffs in this case injunctive relief, as

to the timber standing in January, 1919, is to deprive them of any practical remedy which would not result in serious hardship to defendant. When the latter came on to cut the timber on the eighteenth day of that month, had the plaintiffs (after forbidding the same) remained inactive, and the defendant had cut the timber and transported the same by rail more than 100 miles to its mill in Bay City, as intended, the plaintiffs might, and probably would, have recovered their property in specie, either as logs in the mill yard, or as lumber on the tramways, or at the least, its value at the place of detention.

"Indeed if the present bill be dismissed upon the sole ground that equity will not enforce a forfeiture, the plaintiffs will not thereby be deprived of their actions at law, and they may still do what I have just indicated. The best interests of both plaintiffs and defendant demand an adjudication of their respective rights to the standing timber before its severance and manufacture, and it would be a reproach to the law if such a determination could not be afforded them.

"A decree may be settled restraining defendant from cutting the standing timber from the land in question."

A decree was made in accordance with the opinion. The case is brought here by appeal.

Counsel for appellant claims:

"Our position is as follows:
"A. This timber still belongs to the defendant.
"(1) By virtue of the character of the conveyance from Hiram Harrington and Jessie M. Harrington, his wife, under date of June 19, 1907.
"(2) By virtue of the instrument, signed by Jessie M. Harrington under date of June 2, 1913.
"B. Even if the timber does not belong to the defendant, the bill must be dismissed as seeking to enforce a forfeiture in equity."

Briefly stated the claim of appellant is that, as in the conveyance of the timber a short form of warranty deed with the ordinary *habendum* clause was used, defendant got absolute title to the timber, and that

the cases cited by the learned trial judge are not controlling for that reason. Counsel for appellant says he has no decision in this State that is controlling. We quote from his brief:

"And, as I said once before, the question raised in this case has not been passed upon, where the conveyance was made by a full covenant warranty deed, by the supreme court of this State. The nearest construction I have been able to find was in *Putnam* v. *Tuttle*, 10 Gray (76 Mass.), 48. In this case, 'A deed of land *habendum*, "with all the privileges and appurtenances to the same belonging excepting all the wood and trees on a certain island, I reserve to the grantee, his heirs and assigns forever," and concluding, "it is understood that the wood above mentioned is reserved to the grantor and his heirs forever." ' "

A reference to the case cited will show that it is unlike the case before us. The deed which the court construed in that case was made in 1751, and did not undertake to convey the title to the timber. On the contrary it undertook to reserve to the grantee the title to the timber; we quote: "It is to be understood that the wood above mentioned is reserved to the grantor and his heirs forever." The court held that what was reserved by the deed was the timber growing on the island at the date of the deed, but without limit as to the time when it should be removed. Clearly a different case than the one before us where there is a limit as to the time when the timber must be taken. We think the instrument conveying the title to the timber in the instant case can hardly be called a full covenant warranty deed, as counsel designates it. It should not be overlooked that the party of the second part is a corporation and the sale is made direct to it and nowhere in the paper is it stated the sale is made to its successors and assigns. It is also clear from the paper that the grantor never intended to part with the fee of the land, but did intend to put

a limitation upon the time in which the party of the second part must remove the timber.

We are content with the reasoning and the conclusion of the learned trial judge, and adopt it as our own.

· The decree is affirmed, with costs to the appellees.

STEERE, C. J., and FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.